IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) ) |
| | ) No. 18-cr-20373-MSN-tmp |
| v. | ) ) |
| **MICHAEL THOMPSON,** | ) ) |
| Defendant. | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is defendant Michael Thompson's Motion to Suppress, in which Thompson seeks suppression of evidence seized from a search of his residence and his vehicles. (ECF Nos. 36, 66.) After conducting a suppression hearing, on August 5, 2019, the undersigned submitted a report and recommendation, recommending that the Motion to Suppress be granted in its entirety. (ECF No. 52.) The government filed objections to the report and recommendation in which it argued, among other things, that evidence obtained from the search of one of Thompson's vehicles (a blue two-door Infiniti) should not be suppressed because that vehicle was lawfully towed pursuant to Tenn. Code Ann. § 53-11-451 and then searched only after a certified drug canine positively alerted on the vehicle. Although this argument was raised in the government's response in opposition to the Motion to Suppress, because the government had not presented

any evidence at the suppression hearing regarding the circumstances surrounding the vehicle tow or use of the drug canine, the undersigned concluded that the government had not satisfied its burden of justifying the search of the blue Infiniti. The presiding District Judge granted the government's request for a rehearing on the specific question of whether evidence gathered from Thompson's blue Infiniti should be suppressed, referring the matter to the undersigned for further hearing. (ECF No. 67.) The undersigned conducted a second suppression hearing, after which the parties each filed supplemental briefs.

For the following reasons, it is recommended that the Motion to Suppress be denied with respect to evidence found inside Thompson's blue Infiniti.

## I. PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Detectives Samuel Bush, Jasen Maclin, and Delmas Goodwin, all three of whom credibly testified at the second suppression hearing. The defendant did not call any witnesses.

In early 2018, a confidential informant ("CI") contacted detectives with the Shelby County Sheriff's Office to tell them that a man going by the name of "Michael Hodges" was selling cocaine. In response, officers set up a series of controlled buys with Hodges. Before the buys, the CI was searched and was provided

-2-

with funds to make the purchases. The officers conducted surveillance during the buys and afterwards recovered the cocaine from the CI and field tested it. On January 29 and February 1, 2018, officers conducted two such controlled buys. During both buys, Hodges arrived in a blue two-door Infiniti with a college-themed license plate displaying tag number 9803GT.

Following the buys, officers ran a database search to identify the owner of the blue Infiniti. They discovered the car was registered to a Michael Thompson who lived at 2072 Warren Street in Memphis, Tennessee. Officers then obtained a photograph of Thompson from Facebook, which they showed to the CI. The CI identified the man in the photograph as the person the CI knew as Michael Hodges. After identifying Thompson, officers conducted at least one more controlled buy from him. During that transaction, Thompson drove a different car, a silver convertible Infiniti.

On February 22, 2018, officers executed a search warrant on Thompson's residence at 2072 Warren Street. That same day, officers located Thompson's blue Infiniti at another residence about one mile away from 2072 Warren Street. Thompson was not present at the scene, and the unoccupied vehicle was parked on the street in front of this other residence. The officers decided to tow the vehicle to the narcotics office. At the narcotics office, a certified drug canine was utilized to determine if drugs might be inside the

vehicle. The dog was trained to "alert" by sitting down when it smelled the odor of marijuana, cocaine, heroin, or methamphetamine. The dog circled the car twice. Both times around the car, the dog sat down by the driver's side door and next to the trunk. Based on these positive alerts, the officers searched the car, at which time they found a magazine belonging to a Glock pistol. A federal grand jury returned a three-count indictment against Thompson, charging him with violations of 21 U.S.C. § 841, 18 U.S.C. § 922(j), and 18 U.S.C. § 924(c).

## II. PROPOSED CONCLUSIONS OF LAW

The primary point of contention on rehearing is whether the officers were authorized under Tenn. Code Ann. § 53-11-451 to tow Thompson's blue Infiniti to the narcotics office. If the officers permissibly towed the car, then the search of the car passes constitutional muster because the officers had probable cause to search for drugs based on the positive alerts given by the certified drug canine.[1] See United States v. Sharp, 689 F.3d 616,

---

[1] The drug dog's handler testified extensively at the hearing about the dog's certification and training. This testimony is sufficient to conclude that the dog's positive alerts provided the officers with probable cause to search the car. See Florida v. Harris, 568 U.S. 237, 246–47 (2013) ("[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides

-4-

618 (6th Cir. 2012) ("An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle.") (citing United States v. Diaz, 25 F.3d 392, 393-94 (6th Cir. 1994)); see also Illinois v. Caballes, 543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."); United States v. Patton, 517 F. App'x 400, 402 (6th Cir. 2013) ("[A]n alert by a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for a search of the vehicle.") (citing Diaz, 25 F.3d at 393-94). Accordingly, the issue of primary concern in resolving the instant Motion to Suppress is the officers' reliance on the Tennessee statute.[2]

Pursuant to Tenn. Code Ann. § 53-11-451(a)(4), "[a]ll conveyances, including aircraft, vehicles or vessels that are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale or receipt of [controlled

---

probable cause to search.").

[2] While the government initially raised an "inevitable discovery" argument at the hearing, it abandoned this argument in its supplemental briefing. (ECF No. 74 at 1-2.)

substances]" are subject to forfeiture. According to Tenn. Code Ann. § 53-11-451(b), seizure without process is permitted if "[t]he seizure is incident to an arrest or a search under a search warrant" or if law enforcement "has probable cause to believe that the property was used or is intended to be used in violation of [the statute]." Tenn. Code Ann. § 53-11-451(b)(1) & (4). In this case, Thompson sold drugs out of his blue Infiniti during two controlled buys with a CI on January 29 and February 1, 2018. Officers identified the vehicle by its description and license plate when they found it parked at another location three weeks later, on February 22, 2018. These facts provided the officers with probable cause to believe that the blue Infiniti had been recently used in a manner that violated the statute.

The government relies on several cases in its brief. First, the government likens the instant case to United States v. Shipe, No. 2:08-CR-27, 2008 U.S. Dist. LEXIS 59614, *4 (E.D. Tenn. May 23, 2008). In Shipe, law enforcement attempted to seize the defendant's vehicle pursuant to Tenn. Code Ann. § 53-11-451(b)(4) two and a half months after a law enforcement officer witnessed the defendant conduct a drug transaction from the car. Id. at *7. When the officer pulled the defendant over in order to seize the vehicle, there was contraband in plain sight on the console. Id. at *6. The defendant moved to suppress that evidence on the grounds

that the officer had no lawful basis to seize his vehicle. Id. at *7. Accordingly, the defendant argued that "the 'seizure' of defendant's person on that date, and the resultant search of the vehicle, were illegal." Id. The defendant pointed out that the Tennessee Supreme Court held in Payne v. Brewer, 891 S.W.2d 200 (Tenn. 1994) that the warrantless seizure of a vehicle under Tenn. Code Ann. § 53-11-451(b)(4) is constitutional only if accompanied by "exigent circumstances." Id. at *7 (citing Payne, 891 S.W.2d at 204). The Shipe court, however, found that the Payne decision did not control:

> Clearly [the law enforcement officer] had probable cause to believe that the [defendant's] vehicle had been used in a drug transaction; he observed a drug transaction take place in that vehicle, and the transaction was monitored and recorded. However, in February 2008, there were no 'exigent circumstances,' and if the Payne case is the controlling law, there could have been no valid seizure in February 2008, and thus no subsequent search of the vehicle. However, Payne does not control.

Id. at *8. Rather, the Shipe court found the Supreme Court's decision in Florida v. White, 526 U.S. 559 (1999) controlled. Id. "[T]he Supreme Court noted that although the police lacked probable cause to believe that the defendant's car contained contraband *at the time it was seized*, 'they certainly had probable cause to believe the vehicle itself was contraband under Florida law.'" Id. at *10 (quoting White, 526 U.S. at 565). "Since the vehicle was 'readily movable contraband,' law enforcement officers had

-7-

'greater latitude in exercising their duties in public places.'" Id. (quoting White, 526 U.S. at 565). "Thus, since the police seized the defendant's vehicle in a public parking lot, the warrantless seizure of that vehicle did not involve any invasion of the defendant's privacy. The Supreme Court therefore concluded 'that the Fourth Amendment did not require a warrant to seize respondent's automobile in these circumstances.'" Id. at *10 (quoting White, 526 U.S. at 566). The Shipe court emphasized that, in White, "Florida police officers had observed defendant use his vehicle for a drug transaction several months before they ultimately seized it without a warrant, and without exigent circumstances[.]" Id. Accordingly, the Shipe court held that the "intended seizure of defendant's . . . vehicle . . . was entirely appropriate and constitutional." Id. at *10-11.

The government also relies on United States v. Allen, No. 4:08-CR-40, 2009 U.S. Dist. LEXIS 131900, at *9 (E.D. Tenn. June 17, 2009), for the proposition that officers do not need a warrant to conduct an inventory search or to seize a vehicle if they believe the car is subject to forfeiture under Tenn. Code Ann. § 53-11-451(a)(4). The Allen decision involved a motion to suppress related to an inventory search of a defendant's car. Id. The Allen court noted that "'[a] valid inventory search conducted without a warrant does not violate the Fourth Amendment.'" Id. at *8 (quoting

-8-

United States v. Smith, 510 F.3d 641, 650 (6th Cir. 2007)). However, "[a]n inventory search may only be conducted after the police lawfully take custody of a vehicle." Id. (citing Smith, 510 F.3d at 651). The Allen court stated that "Tennessee law permits the seizure of vehicles used to transport unlawful controlled substances." Id. at *9 (citing Tenn. Code Ann. § 53-11-451(a)(4)). As a result, the Allen court found that law enforcement, which believed the car to be subject to forfeiture, "did not need a warrant to conduct an inventory search, Smith, 510 F.3d at 651 (citing United States v. Decker, 19 F.3d 287, 290 (6th Cir. 1994), or to seize the vehicle, Smith, 510 F.3d at 651 (citing Florida v. White, 526 U.S. 559, 566 [] (1999))." Id.

The undersigned agrees with the ultimate conclusions reached by the cases relied upon by the government and finds that, under the factual circumstances of the instant case, the officers were authorized to tow Thompson's blue Infiniti, which was parked on a public street, based on Tenn. Code Ann. § 53-11-451. See, e.g., State v. Brewer, No. M2018-00566-CCA-R3-CD, 2019 Tenn. Crim. App. LEXIS 646, at *22 (Tenn. Crim. App. Oct. 11, 2019) (citing State v. Leveye, 796 S.W.2d 948, 953 (Tenn. 1990) (adopting California v. Carney, 471 U.S. 386 (1985)); see also State v. Saine, 297 S.W.3d 199, 207 (Tenn. 2009).

### III. RECOMMENDATION

For the above reasons, it is recommended that the Motion to Suppress be denied as it relates to evidence seized during the search of Thompson's blue Infiniti.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 3, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**